## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JANE DOES #1-#4, minors, by and through
their next friend and Guardians JOHN DOES
#1-#4

      Plaintiffs

v.

VICKSBURG COMMUNITY SCHOOLS;
KEEVIN O'NEILL in his official capacity as
Superintendent of Vicksburg Community
Schools; STEVE GOSS in his official capacity
as Assistant Superintendent of Vicksburg
Community Schools; ADAM BRUSH in his
official capacity as Principal of Vicksburg
High School; MATTHEW HAWKINS in his
official capacity as Vice Principal of
Vicksburg High School;

      Defendants.

Case No. _____

HON. _____

**CLAIM OF CIVIL RIGHTS VIOLATION
and VIOLATION OF TITLE IX**

**JURY TRIAL DEMANDED**

---

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, JANE DOES #1-#4, minors by and through their Guardians JOHN

DOES and their attorneys, DePERNO LAW OFFICE, PLLC, and for their Complaint against

VICKSBURG COMMUNITY SCHOOLS; KEEVIN O'NEILL in his official capacity as

Superintendent of Vicksburg Community Schools; STEVE GOSS in his official capacity as

Assistant Superintendent of Vicksburg Community Schools; ADAM BRUSH in his official

capacity as Principal of Vicksburg High School; MATTHEW HAWKINS in his official capacity

as Vice Principal of Vicksburg High School; hereby allege and complain as follows:

## INTRODUCTION

1.    This case is about the intentional violation of children's fundamental right to bodily

privacy contrary to constitutional and statutory principles, including the Fourteenth Amendment,

Title IX, invasion of seclusion, and the Michigan's Revised School Code being MCL 380.1 *et seq*, which requires separate facilities based on sex.

2.     The importance of privacy has long been considered central to our country's notions of freedom: a measure of personal isolation and personal control over the conditions of privacy's abandonment is of the very essence of personal freedom and dignity.

3.     It was recently discovered that, unbeknownst to Plaintiffs, their parents, and other students and parents at Vicksburg High School, a public high school in the Vicksburg Community Schools ("Vicksburg High School"), the Defendants have secretly allowed biological males to use the girls' multi-user private restrooms and locker rooms.

4.     After Plaintiffs informed Defendants that there was a boy in their restrooms exposing himself, Defendants stated that "the law was settled" that students who mentally identify themselves with the opposite sex could choose the locker room and restroom to use, and physical sex did not matter. Defendants stated "it's fine." Defendants told Plaintiffs they needed to "tolerate it" and make it as "natural" as they possibly could. Defendants told Plaintiffs that they should try not to embarrass the biological male student. Instead, they should "look away" and not "bully" the biological male.

5.     Although Plaintiffs are hard-working, high achieving students, the school has discriminated against them and violated their privacy rights by allowing male students to dress as girls and use the girls' multi-user private restrooms and locker rooms. In some situations, it has caused Plaintiffs and other biologically female students to be fearful, to stay away from the girls' restrooms and locker rooms, to hold their urine the entire day, and on at least one occasion cause one of the Plaintiffs significant embarrassments during her menstrual cycle because she was fearful of using the girls' restroom.

6.      By forcing Plaintiffs and other female students to endure this type of discrimination and harassment and by failing to provide a safe educational environment for the Plaintiffs and other female students, the School District intentionally and purposefully caused Plaintiffs' privacy to be violated. Indeed, the School District did not inform Plaintiffs or their Guardians, before they implemented this policy that they were permitting students of the male sex to enter locker rooms and restrooms of students of the female sex in order to use the toilet and fully expose themselves.

7.      The School District had not informed Plaintiffs or their Guardians that despite the words on locker room and restroom doors, they would no longer protect Plaintiffs' expectation of privacy from viewing or being viewed by members of the opposite sex when they are present in multi-user private facilities such as restrooms and locker rooms.

8.      The actions and policies violate Plaintiffs' fundamental right to bodily privacy, Title IX, intrusion upon seclusion, as well as Michigan law requiring separate facilities at our public schools. Defendants also breached their fiduciary duties.

9.      No student should be forced to use multi-user private facilities at school, like locker rooms and restrooms, with students of the opposite sex. No school district should violate its students' constitutional and statutory rights, especially when it means abandoning a common-sense practice that long protected every student's privacy and access to education. Yet the Defendants have taken precisely these actions in this case.

10.     Plaintiffs now seek a declaratory judgment that Defendants purposefully violated Plaintiffs' privacy rights and further attempted to harass and coerce the minor Plaintiffs into further privacy violations. Plaintiffs asks this Court to declare the Defendants' policy and actions unlawful, and order the other relief requested herein.

## JURISDICTION and VENUE

11.    This action arises under 42 U.S.C. §§ 1983 *et seq.* (the "Civil Rights Act") to redress the deprivation of rights secured by the Fourteenth Amendment to the United States Constitution, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), the Michigan Constitution and common law, and the Revised School Code.

12.    This Court also has original jurisdiction and subject matter jurisdiction pursuant to 28 U.S.C. Section § 1331 (as this action involves a federal question and the laws of the United States) and 28 U.S.C. Section § 1343 (as this action involves the right to recover damages for injury and the deprivation of rights and privileges.) See also 28 U.S.C. §§ 1361, and 1367.

13.    Jurisdiction is also conferred upon this Court by 28 U.S.C. § 1343(a)(3) and (4), 28 U.S.C. § 2201 & 2202, and 42 U.S.C. § 1983, 1985, and 1988, this being an action for declaratory judgment and equitable relief authorized by law to redress deprivations and violations under color of law of rights, privileges, and immunities secured by the United States Constitution and Michigan Constitution of 1963, as amended. See also Federal Rule of Civil Procedure 57.

14.    The Court has jurisdiction to award nominal and compensatory damages under 28 U.S.C. § 1343(a)(4).

15.    The Court has jurisdiction to award reasonable attorneys' fees and costs under 28 U.S.C. § 2412, 42 U.S.C. § 1988.

16.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state-law claims that are related to, and form part of, the same case or controversy. It is appropriate that this Court exercise supplemental jurisdiction over the state law claims because they involve the same parties and operative facts as the federal claims. Therefore, the Court's

exercise of supplemental jurisdiction will further economy, convenience, and fairness to the parties.

17.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b) and (e), because a substantial part of the events or omissions giving rise to all claims occurred in this district where the District Defendant is located.

18.     This Court has personal jurisdiction over Defendants because they are domiciled in Michigan.

19.     Plaintiffs request trial by jury, pursuant to Fed. R. Civ. P. 38.

**PARTIES**

**A.**     **Plaintiffs**

20.     Plaintiffs and their Guardians are citizens of the United States and residents of Michigan.

21.     Plaintiff Jane Doe #1 is a minor girl. She is a graduated student who was a senior last year at Vicksburg High School. Because Jane Doe #1 is a minor, this action is brought on her behalf by and through her legal Guardians.

22.     Plaintiff Jane Doe #2 is a minor girl. She is a student who will begin her senior year at Vicksburg High School at the end of August of 2023. Because Jane Doe #2 is a minor, this action is brought on her behalf by and through her legal Guardians.

23.     Plaintiff Jane Doe #3 is a minor girl. She is a student who began her junior year at Vicksburg High School at the end of August of 2023. Because Jane Doe #3 is a minor, this action is brought on her behalf by and through her legal Guardians.

24.     Plaintiff Jane Doe #4 is a minor girl. She is a student who began her sophomore year at Vicksburg High School at the end of August of 2023. Because Jane Doe #4 is a minor, this action is brought on her behalf by and through her legal Guardians.

**B.     Defendant Vicksburg Community Schools**

25.     Vicksburg Community Schools (the "School District") is organized under the laws of the State of Michigan.

26.     The School District includes public educational institutions that provide students a kindergarten through 12th-grade education.

27.     The School District and its schools receive federal funds and so are subject to the requirement s of Title IX.

28.     The School District schools include three K-5 elementary schools, one 6-8 middle school, a virtual academy,[1] a "pathway" high school,[2] and one senior high school serving grades 9, 10, 11 and 12.

29.     The School District is governed by The Board of Education (the "School Board"), a seven-member elected body that sets policy for the School District and delegates responsibility for the administration of the School District to its Superintendent and Assistant Superintendent, who oversee a number of district-level administrators.

30.     The School District is responsible for the enforcement of policies through its Superintendent, Assistant Superintendent, administrators, teachers, attorneys, and other employees.

---

[1] The Virtual Academy is an online school offered by Kalamazoo RESA for students in grades 6-8 as an alternative to a traditional middle school.

[2] Vicksburg's Pathways High School has 99 students in grades 9-12

C.     **Defendant Superintendent Keevin O'Neill**

31.     Defendant O'Neill is the current Superintendent of The School District and is sued in his official capacity. At all times relevant to the events described herein, Superintendent O'Neill acted within the scope of his employment as an employee, agent, and representative of the School Board. In such capacity, he implemented a new policy in which student(s) of one sex are permitted to enter and use restrooms, locker rooms, and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Superintendent O'Neill has final policymaking authority for The School District in circumstances not otherwise provided for in the School District Bylaws and Policies.

D.     **Defendant Assistant Superintendent Steve Goss**

32.     Defendant Goss is the current Assistant Superintendent of The School District and is sued in his official capacity. At all times relevant to the events described herein, Assistant Superintendent Goss acted within the scope of his employment as an employee, agent, and representative of the School Board. In such capacity, he implemented a new policy in which student(s) of one sex are permitted to enter and use restrooms, locker rooms, and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Assistant Superintendent Goss has final policymaking authority for The School District in circumstances not otherwise provided for in the School District Bylaws and Policies.

7

E.    **Defendant Principal Adam Brush**

33.    Defendant Brush is the current Principal of Vicksburg Community High School and is sued in his official capacity. In such capacity, he implemented a new policy in which student(s) of one sex are permitted to enter and use restrooms, locker rooms, and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Principal Brush has final policymaking authority for Vicksburg Community High School with respect to the day-to-day enforcement of the School District's policies, including the newly adopted policy or practice permitting students of one sex to enter and use private facilities like restrooms, locker rooms, and shower facilities with members of the opposite sex.

F.    **Defendant Vice Principal Matthew Hawkins**

34.    Defendant Hawkins is the current Vice Principal of Vicksburg Community High School and is sued in his official capacity. In such capacity, he implemented a new policy in which student(s) of one sex are officially authorized to enter and use restrooms, locker rooms, and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Vice Principal Hawkins has final policymaking authority for Vicksburg Community High School with respect to the day-to-day enforcement of the School District's policies, including the newly adopted policy or practice permitting students of one sex to enter and

use private facilities like restrooms, locker rooms and shower facilities with members of the opposite sex.

## FACTS

35.    Plaintiffs are female students who are or were properly and legally enrolled at Vicksburg Community High School.

36.    Vicksburg Community High School has 8 male restrooms and locker rooms and 8 female restrooms and locker rooms.

37.    Prior to and during classes, the female restrooms and locker rooms experience longer wait periods per restroom stall.

38.    These actions were not discovered until Plaintiffs and other students notice and discovered a biological male standing in the girls' restroom. For some of them, their first instinct was to flee. When some of the Plaintiffs asked other students about this incident, they discovered that other students had experienced the same encounter.

39.    These encounters caused Plaintiffs and other biological girls to be fearful of using the multi-user private girls' restrooms and locker rooms on their own. It forced them to travel together, to search the restrooms and lockers rooms before using them, and to otherwise live in fear. For some Plaintiffs and others, they refused to use the girls' restrooms and locker rooms, instead holding their urine the entire school day. This not only affected their comfort level while at school but has also affected their attitudes.

40.    Some Plaintiffs and other girls did not understand if the biological male was in the girls' restroom and locker rooms in order to spy on them, take pictures, threaten them, or harm them.

41.     On one occasion, the biological male using the girls' restroom "stared down" one of the Plaintiffs in a threatening manner, as if Plaintiff was the one in the wrong restroom, causing Plaintiff to fear for her safety.

42.     Plaintiffs have discussed this situation with Defendants who responded that "there is nothing they could do" or that "the law is settled" and that they will continue to allow biological males to use the girls' multi-user private restrooms and locker rooms.

43.     Defendants have also stated that "because of privacy concerns" they will not disclose to Plaintiffs, other students, or parents how many biological males have in the past or are currently dressing like girls and using the girls' multi-user private restrooms and locker rooms.

44.     Michigan state law requires all students in Vicksburg Community High School to take 1 credit in a physical education ("PE") course. Therefore, PE is a mandatory course at the School District and is a requirement to graduate.

45.     It is mandatory that students m PE class change into clothing appropriate for PE class. See MCL 380.1502.

46.     The PE locker rooms have signs which indicate they are either for girls or for boys. Plaintiffs have always used the girls' locker room and restrooms because their sex is female. However, Defendants now permit boys to use the girls' locker room, strip naked, and expose themselves to girls.

47.     Plaintiffs have a reasonable expectation that they would have privacy in the locker rooms and restrooms in the school from viewing members of the opposite sex or from being viewed by members of the opposite sex.

48.     Plaintiffs have, at times, been using the restroom when they have suddenly realized a male student using the restroom, fully exposed. Plaintiffs understand that the same could happen in the locker rooms.

49.     Plaintiffs have experienced immediate confusion, embarrassment, humiliation, and loss of dignity upon finding themselves in this circumstance where a male student was exposing himself to female students.

50.     Plaintiffs, along with various classmates, went to speak to the Principal Brush and Vice Principal Hawkins to let him know what had happened.

51.     Defendants purposefully violated Plaintiffs' privacy rights and further attempted to harass and coerce the minor Plaintiffs into further privacy violations.

52.     No student should be forced to use multi-user private facilities at school, like locker rooms and restrooms, with students of the opposite sex. No school district should violate its students' constitutional and statutory rights, especially when it means abandoning a common-sense practice that long protected every student's privacy and access to education. Yet the Defendants have taken precisely these actions in this case.

53.     The term "sex" refers to one's biological/anatomical status as either male or female. Sex is fixed at conception, binary, objectively verifiable, and rooted in our human reproductive nature.

54.     The Defendants secretly authorized a male student to have unrestricted access to enter and use girls' private facilities. Defendants knew that if they publicly announced this plan, they would be met with considerable opposition.

55.     On August 14, 2023, at the School Board meeting, several parents addressed the School Board. One parent stated:

"Ladies and gentlemen of the Vicksburg School Board, I have three daughters that attend Vicksburg, two at Indian Lake and one in middle school. I come to you today with a concern that I'd like your clarity on. I've heard stories of biological males in female restrooms, biological females in a male locker room. I've heard of a supposed student changing their gender on a weekly or potentially daily basis. I'm coming to you for clarity. What is the truth? I know you may not be able to speak about specific students, but what is Vicksburg's restroom and locker room policy? If we don't have a policy, what is our established practice? Is our practice to allow biological males into female restrooms and vice versa? Or is it to hold to the historic established ethic of male and female. My concern is that our daughters and sons could become victims of non-physical contact sexual abuse. Child sexual abuse can also include behaviors that do not involve touching or physical contact. These behaviors can be just as upsetting and emotional harmful to a child as some touching behaviors. Non-touching behaviors that are considered to be child sexual abuse include watching a child undress or use the bathroom often without the child's knowledge or exposing a person's genitals to a child or asking a child to expose themselves. If this administration's stance is to force our daughters (biological females) into accepting biological males into their restrooms and locker rooms and vice-versa, I believe that this is not only immoral and indecent, I believe it meets standards of child sexual abuse. If this is not true, then please correct me where I'm wrong. If it is true, then I call on this board to do what is right and protect our children."[3]

56.    Another parent stated:

"Good evening, ladies and gentlemen. First, I would like to say that I am by no means comfortable with public speaking so please bear with me if I seem to fumble through this. I have three children; a son who graduated from Vicksburg in '22, a daughter who will be a junior this year and a daughter who will be in first grade. Yes, we have a big age gap with our kids; we used to joke, saying "we loved Vicksburg schools so much that we wanted to have a third, just to send them through the school system." But, our thoughts on that may be changing a bit in light of some of the situations happening within our district.

A while ago it was brought to our attention as well that there was a male student using the girl's bathroom. Our daughter approached the principal and vice principal about this. She was told that the student would be directed to use the single stall staff bathrooms if he chose to not use the boys bathroom; which this student did NOT do. Many female students are using the bathroom only one time a day out of fear of anxiety that a male student could be in the bathroom with them, or to the point where they just can't hold it any more. As a healthcare professional in Women's Health, I can tell you it is extremely dangerous for these young girls to dehydrate themselves to where they are using the restroom ONE TIME during a seven-hour school day. These girls are being placed at risk for not only dehydration but urinary tract infections, kidney infection, bowel disfunction; and not to mention

---

[3] https://www.youtube.com/watch?v=6_patNmXnII at [18:10 – 19:47]

12

the added health risks of only using the bathroom one time a day when it is that time of the month for a girl!! In addition to the physical health risks this is causing our girls, think of the mental health risks; anxiety, embarrassment of bleeding through clothing, fear that a boy is in the stall next to them they need to ask to "spare a square" or need a pad or tampon. Middle school and high school is hard enough for our youth without the added pressure that is being placed on these girls in this type of situation.

Earlier this year a group of concerned parents had a meeting with Superintendent Keevin O'Neill, Assistant Superintendent Steve Goss and Board President Skip Knowles regarding this situation. Parents were told there was "nothing the board could do because transgender students are a 'protected class'". What about our daughters' biological rights to privacy and protection? Our daughters are a protected class and need to be protected. The "solution" that was given to parents was that the girls had to use the single staff bathroom if they did not feel comfortable with a boy in their bathroom. How is that right? But, it does seem that we are living in a world where right is being made out to be wrong and what's wrong is being forced to be accepted. Biology and truth are being overlooked by subjectiveness of what a person "thinks" or "feels" of themselves. During that meeting we were told that not only was this student allowed in the bathroom, but could also use the girl's locker rooms, without any type of regulation or monitoring of "what was going on" in the locker rooms. Let me ask this, how is it that my daughter cannot wear a spaghetti strap tank top, a crop top or a one shoulder tank without being dress coded, but a particular student can wear very revealing clothing, clothing that shows he is biologically a boy and can walk around as a hormonal teenage boy in the girls locker room naked if he wanted to, any boy for that matter could, and it is allowed?

Now, we have all heard the tragic stories of what is happening to females across the nation with transgenders in the bathrooms. During the parent meeting, the schools "defense" statement was "but nothing has happened, yet". That is the key word, "yet." Is anyone on the board willing for the "first" victim to be their daughter or granddaughter? And I say "first" because, how do we know nothing has happened yet? Multiple girls and parents have been told there's "nothing the school can do", so why would a young girl seek help from someone who has basically turned their backs on them? The school has emergency protocols in place for a mass shooting, "just in case". The school has fire drills, tornado drills, etc., for "just in case" situations. What is the school board doing to prepare and prevent one of our girls from being sexually assaulted by a male student in the bathroom or locker room? We were told that a follow-up parents meeting would take place after the rest of the board was made aware of the situation. At the last board meeting after another concerned parent spoke up about this same matter, board member Tina Forsyth asked what building this was occurring in. So, the additional board members were NOT notified of this situation like we were told would happen. Parents have yet to be informed of a follow-up meeting for what will be done regarding this situation. School will be starting in two weeks and we have no acceptable resolution to this matter.

I am also a proud member of the Facebook group that has grown to over 400 members including students, parents, grandparents, and other concerned community members who are standing up for what is right. Everyone in the group shares the same beliefs and standards that it is not safe to have biological boys sharing the bathroom with biological females and vice-versa. This is the same group that was previously referred to as a hate group at a board meeting. Disagreement in a matter and standing up for what is right is not the same as hate. And we all know Facebook, if it were a hate group it would be shut down, censored or "fact checked". The only "hate" that is being felt from this group is that we hate that our daughters are being put in potentially unsafe situation, hate that their rights as young women are being challenged and violated, hate that their health and well-being is being jeopardized, hate that the school board hasn't been transparent with parents and hate that moral ethics and social standards are not being followed in a place where our children are to be kept safe . . . the school.

One of the school boards responsibilities is the safety of the students. Allowing males in the female bathroom and vice-versa is not safe and poses potential harm to students of both genders. You have a duty and our daughters deserve the protection that is biologically righted to them in having only other females in the bathrooms and locker rooms. We implore you all to do better for daughters and the female students at Vicksburg Community Schools."[4]

57.     In response, Board President Skip Knowles read the following statement prepared

prior to the meeting:

"I'm not going to sit there and make a statement about whether we do agree or don't agree, but I am going to read a statement that we've had vetted by our attorneys and I understand that this is tough.

First, please note that Vicksburg Community Schools and school officials will not answer questions about the specific students because the disclosure of personally identifiable information about the student violates federal Family Educational Rights and Privacy Act and state law.

Second, the district recognizes that providing students with a safe and supportive educational environment is of the utmost importance. The district's policies prohibits discrimination, bullying, harassment based on the basis of sex, which includes sexual orientation and gender identity. In addition, to following its policies it is equally important that the district complies with federal, state, and local laws and guidance and legal precedent related to unlawful discrimination, bullying, and harassment. State and federal law and guidance and current binding case law in Michigan require public schools to allow all students including transgender

---

[4] https://www.youtube.com/watch?v=6_patNmXnII at [20:00 – 25:00]

students to use the restrooms that corresponds with their their gender identity. Or use single use . . .

[Inaudible from audience]

[point at someone] I don't want any comments please.

Or to use single user restrooms whichever the student chooses. If the student prefers to use single occupancy restroom we ask our students to let an administrator know and arrangements will be made. Regardless of gender identity, Vicksburg Community Schools expect that any individual using a restroom will respect the privacy of everyone else using the restroom and will conduct themselves in an appropriate manner. If not, the student will be held accountable according to Vicksburg Community Schools discipline policy. As a school community we are obligated to create a safe and welcoming school climate, supervise it appropriately, and clearly articulate expectations about acceptable behaviors. We are not also required to address allegations of unlawful . . . we are also required to address allegations of unlawful bullying, harassment, or discrimination and will continue to do so.

The only thing I would ask everyone to understand, and this not [inaudible] this is just listening to you guys' statement, you need to take this up with your legislators. Our state rep around here is Matt Hall and I would tell you he would need to have some action at the state level. We're kind of caught in the middle of it.[5]

58.     This statement by the School Board is factually and legally wrong. The School Board does not mention and clearly refuses to recognize the precedent in the Sixth Circuit styled *L.W. et al v Skrmetti et al*, 23-5600 (6th Cir.) (recommended for publication). The United States Supreme Court has not recognized "transgender" as a constitutionally protected class. "The Court 'has not recognized any new constitutionally protected classes in over four decades, and instead has repeatedly declined to do so." *Id*. at 12 (quoting *Ondo v City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015). Indeed, *Obergefell v. Hodges*, 576 U.S. 644 (2015) declined to address whether gay individuals qualify as a suspect class.

59.     Further, this case is a case of first impression in Michigan jurisprudence.

---

[5] https://www.youtube.com/watch?v=6_patNmXnII at [25:12 – 27:43]

60.     Nevertheless, Defendants have published misinformation claiming this issue is settled law. Defendants' policy, as described above, is grounded in gender identity theory, which asserts that a person's subjective perception of their own "gender" should be more important in every conceivable setting than sex, one's biological/anatomical status as either male or female.

61.     Under gender identity theory, gender is subjectively assumed, not objectively verifiable, exists on a continuum, and is sometimes fluid. By adopting gender identity theory as the basis for regulating access to private facilities, Defendants are violating sex discrimination law by not protecting students based on sex but instead imposing an individual's subjective perception of their gender on other students who value their privacy based on anatomical differences between the sexes.

62.     This practice has had a severe and negative impact on Plaintiffs. For instance, Plaintiffs have experienced embarrassment and humiliation, both in terms of being viewed and viewing a student of the opposite sex in a state of undress and because of the stigmatization and criticism they received from other students and adults, including Defendants, fueled by the administration's policy and actions. Plaintiffs have experienced fear, embarrassment, and humiliation by failing to timely void urine, which has a direct and adverse psychological and physiological effect, and the Defendants' policy inhibits Plaintiffs from timely voiding. Plaintiffs also fear the future embarrassment of meeting students of the opposite sex in the restroom when simply relieving themselves. Plaintiffs now avoid using the restroom during the school day because of the ongoing risk of having their privacy violated. Plaintiffs have lived in fear, embarrassment, and humiliation by knowing their rights and privileges were be mocked and ridiculed by Defendants, the School Board, administrators, teachers, attorneys, and other employees.

63.     Because of the School District's policy and actions, Plaintiffs do not feel secure in the locker rooms or restrooms that are properly set aside for the exclusive use of girls to protect their privacy from exposure to members of the opposite sex.

64.     Michigan law is clear in MCL 750.355a that any person who "knowingly make[s] any open or indecent exposure of his or her person . . . is guilty of a crime." MCL 750.157a makes it a felony to conspire to permit another person to commit such crime.

65.     After Plaintiffs informed Principal Brush and Vice Principal Hawkins that there was a boy in their restrooms exposing himself, Principal Brush and Vice Principal Hawkins indicated that "the law was settled" that students who mentally identify themselves with the opposite sex could choose the locker room and restroom to use, and physical sex did not matter.

66.     Plaintiffs asked whether there was anything that Principal Brush and Vice Principal Hawkins could do to protect them from this situation of being exposed to the male genitalia in the female locker rooms and restrooms. Principal Brush and Vice Principal Goss responded that there was nothing they could do and "it's fine.".

67.     Principal Brush and Vice Principal Hawkins told Plaintiffs to "tolerate" it and make it as "natural" as they possibly could. Principal Brush and Vice Principal Hawkins further stated that Plaintiffs should try not to embarrass the male student exposing his genitalia. Rather, the Plaintiffs should simply look the other way and that it was just as awkward for the male student.

68.     The School District intentionally and purposefully caused Plaintiffs' privacy to be violated. Indeed, the School District did not inform Plaintiffs or their Guardians before they implemented this policy that they were permitting students of the male sex to enter locker rooms and restrooms of students of the female sex in order to use the toilet and fully expose themselves.

69.     The School District had not informed Plaintiffs or their Guardians that despite the words on locker room and restroom doors, they would no longer protect Plaintiffs' expectation of privacy from viewing or being viewed by members of the opposite sex when they are present in multi-user private facilities such as restrooms and locker rooms.

70.     The School District's directive to Plaintiffs was that they must change their clothes with students of the opposite sex or use restrooms with students of the opposite sex, and make it as natural as possible, and that anything less would be intolerant and bullying against male students who profess a gender identity with the female sex.

71.     After Plaintiffs' privacy was violated, the School District's actions marginalized and shamed Plaintiffs, and unlawfully attempted to coerce and intimidate Plaintiffs into accepting continuing violations of their bodily privacy.

72.     The anxiety, embarrassment, and stress Plaintiffs (as females) feel as a direct result of Defendants' practice and actions has caused them to refrain from using restrooms as much as possible, stress about when and if they can use a given restroom without running into a naked or exposed male person of the opposite sex, and opting to hold their bladder rather than using the school's restroom. This has caused an ever-present distraction throughout the school day, including during class instructional time. In some cases, Plaintiffs have missed classes and school.

73.     Failing to timely void urine has direct and adverse psychological and physiological effects, and the Defendants' policy inhibits Plaintiffs from timely voiding.

74.     Plaintiffs' Guardians subsequently met with Superintendent O'Neill in June 2023 to voice their concerns. Superintendent O'Neill brought the School District's attorney to the meeting.

75.     Plaintiffs' Guardians explained how Plaintiffs' bodily privacy had been violated by the School District's actions and sought answers to ensure it did not happen again. It was then that

Principal Brush indicated that the School District is "all-inclusive," the School District was advised by its attorneys that "the law was settled," and that if Plaintiffs had a problem changing or using restrooms with people of the opposite sex, they would give them permission to go to the principal's office to change or urinate.

76.     By mandating that Plaintiffs use the principal's office to change or urinate if they want privacy, Defendants have prevented them from using the facilities that, by state and federal law, are provided for use solely by females and that are required to ensure that students of one sex have their privacy protected from members of the opposite sex.

77.     The School District further marginalized, intimidated, and shamed Plaintiffs by allowing them to be subject to indecent exposure, a criminal act, in violation of MCL 750.335a.

78.     The School District further marginalized, intimidated, and shamed Plaintiffs by letting it be known to administrators, teachers, attorneys, and other employees of the School District that Plaintiffs had gone to the Principal and Vice Principal over the violation of their bodily privacy. This violated Plaintiffs' right to privacy.

79.     Plaintiffs felt harassed, shamed, and bullied by the School District's publication to administrators, teachers, attorneys, and other employees about the incident and their concerns.

80.     The School District and its attorneys then advised Plaintiffs' Guardians that if they were still uncomfortable with the "arrangements" provided, that they could try homeschooling "as an option."

81.     The School District's actions have forced Plaintiffs to stop changing in the locker rooms and to stop using the girls' restrooms that are, by state law, specifically designated for females. This has had adverse effects on Plaintiffs' physical and mental health.

82.     Plaintiffs feel violated, humiliated, and embarrassed by the invasion of privacy.

83.    Because of the privacy violation, as well as the School District's subsequent actions, Plaintiffs have also experienced anxiety, stress, intimidation, fear, apprehension, and loss of dignity.

84.    These daily persistent feelings of anxiety, stress, humiliation, embarrassment, apprehension, distress, and violation of privacy stay with Plaintiffs and impact them throughout the day, distracting them from instructional time.

85.    Plaintiffs are suffering and will continue to suffer irreparable harm because of the Defendants' actions.

86.    Plaintiffs have no adequate remedy at law.

## COUNT 1

**VIOLATION OF THE FUNDAMENTAL RIGHT TO PRIVACY
IN VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION**

**42 U.S.C. § 1983**

87.    Plaintiffs realleges all matters set forth above and incorporate them herein.

88.    The Fourteenth Amendment protects citizens against violation of fundamental rights by state actors.

89.    Fundamental rights are liberty interests deeply rooted in the nation's history and tradition and implicit in the concept of ordered liberty.

90.    Plaintiffs have a fundamental right to bodily privacy that, at a minimum, includes protection from intimate exposure of their body and intimate activities to a person of the opposite sex. It also includes the corollary protection from intimate exposure to a male's body or intimate activities.

91.     The fundamental right to bodily privacy as to persons of the opposite sex is deeply rooted in the nation's history and tradition and has been recognized as flowing from the United States Constitution as well as federal and state statutory and common law. See, e.g., *Doe u. Luzerne County*, 660 F.3d 169, 176 n.5 (3d Cir. 2011) (holding that a person has a privacy interest in his or her "partially clothed body," recognized by various sister circuits, and arising out of the Fourteenth Amendment); *Borse v. Piece Goods Shop, Inc*., 963 F.2d 611, 621 (3d Cir. 1992) (recognizing that the collection of urine sample may constitute an invasion of privacy if "it involves the use of one's senses to oversee the private activities of another" since the performance in public of such activities are "generally prohibited by law as well as social custom" and failure to regard privacy "could constitute a substantial and highly offensive intrusion upon seclusion").

92.     More recently on December 30, 2022, the *en banc* Eleventh Circuit, by a vote of 7-4, reversed the decision of the district court, concluding that the school district's policy of keeping boys and girls separate does not violate the Constitution or Title IX. *Adams ex rel. Kasper v. School Board of St. Johns County, Florida*. No. 18-13592 (11th Cir. Dec. 30, 2022) (for publication). In that case, plaintiff Drew Adams, a biological female, was required to use the girls' restroom by the school district. The *en banc* court concluded that "the bathroom policy does not unlawfully discriminate on the basis of biological sex" and stated:

> Indeed, the district court "agree[d] that the School Board has a legitimate interest in protecting student privacy, which extends to bathrooms." Understanding why is not difficult—schoolage children "are still developing, both emotionally and physically." See *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 636 (4th Cir. 2020) (Niemeyer, J., dissenting) ("[A]ll individuals possess a privacy interest when using restrooms or other spaces in which they remove clothes and engage in personal hygiene, and this privacy interest is heightened when persons of the opposite sex are present. Indeed, this privacy interest is heightened yet further when children use communal restrooms . . . ."). And even the more generally acceptable notion that the protection of individual privacy will occasionally require some segregation between the sexes is beyond doubt—as then-Professor Ruth Bader Ginsburg noted, "[s]eparate places to disrobe, sleep, [and] perform personal bodily

functions are permitted, in some situations required, by regard for individual privacy." Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post, Apr. 7, 1975, at A21 (emphasis added).

93.     The fundamental right to bodily privacy is also implicit in the concept of ordered liberty because a government that compels its citizens to disrobe or attend to intimate activities in the presence of the opposite sex violates the core of personal liberty, and it deprives its citizens of the full benefits afforded to its citizens when it conditions those benefits on surrendering the right to bodily privacy.

94.     Throughout its history, American law and society has had a national commitment to protecting citizens, and especially children, from suffering the risk of exposing their bodies, or their intimate activities, to the opposite sex.

95.     Our understanding of personal privacy from persons of the opposite sex is so universal as to require the use of separate facilities on the basis of sex in all kinds of contexts. See MCL 380.10 ("It is the natural, fundamental right of parents and legal guardians to determine and direct the care, teaching, and education of their children. The public schools of this state serve the needs of the pupils by cooperating with the pupil's parents and legal guardians to develop the pupil's intellectual capabilities and vocational skills in a safe and positive environment."). See also Mich. Admin Code R. 325.3627 requiring "[a] separate toilet facility for each sex shall be provided."

96.     Personal privacy is also recognized in the context of criminal law. For example, it is a misdemeanor to commit "lewd and lascivious" behavior. See MCL 750.335. It is a misdemeanor to commit indecent exposure. See MCL 750.335a. It is a felony to commit "gross indecency." See MCL 750.338, 338a, and 338b.

97.     Criminal protections are heightened for children. See, e.g., MCL 750.145a making it a felony for "an act of gross indecency" against children based on age.

22

98.    It is illegal to possess, distribute, or even view images of naked children. See MCL 750.145c.

99.    Michigan has also criminalized "sexting" pictures of minors. MCL 722.675.

100.    Because of our national commitment to protect our citizens, and especially children, from the risk of being exposed to the anatomy of the opposite sex, as well as the risk of being seen by the opposite sex while attending to private, intimate needs, sex-separated restrooms and locker rooms are ubiquitous in public places.

101.    Using public restrooms and locker rooms separated by sex are an American social and modesty norm.

102.    Historically, purposefully entering a restroom or locker room designated for the opposite biological sex has been considered wrongful, and even criminal, behavior.

103.    Freedom from the risk of compelled intimate exposure to the opposite sex, especially for minors, is deeply rooted in this Nation's history and tradition.

104.    It is also implicit in the concept of ordered liberty.

105.    The ability to disrobe absent the presence of the opposite sex, along with the freedom to use the restroom absent the presence of the opposite sex is fundamental to most people's sense of self-respect and personal dignity.

106.    If the government were granted the far-reaching and extreme power to compel its citizens to disrobe or risk being unclothed in the presence of the opposite sex, then little personal liberty involving our bodies would be left.

107.    Because freedom from the risk of compelled exposure to the opposite biological sex, especially for minors, is deeply rooted in this nation's history and tradition and implicit in the

concept of ordered liberty, it is a fundamental right. See *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

108.    Specifically: minors have a fundamental right to be free from State compelled risk of exposure of their bodies, or their intimate activities, such as occur within restrooms and locker rooms, to the opposite biological sex.

109.    An abridgement of fundamental rights is presumptively unconstitutional and can only be justified if it survives strict scrutiny under which the law must serve a compelling state interest by the most narrowly tailored means.

110.    The Defendants' actions and practice violated Plaintiffs' fundamental right to privacy because it allows a biological male into the girls' locker room and restroom and has subjected Plaintiffs to being exposed to male genitalia.

111.    Shocked and distressed, Plaintiffs met with Defendant Principal and Vice Principal.

112.    When Plaintiffs asked to be protected from the situation, they were told that there was nothing the School District could do and that instead, Plaintiffs would have to share the girls' locker room or restrooms with a person of the opposite sex. They were told to tolerate it and make it as natural as possible.

113.    Even after Plaintiffs' Guardians got involved, they were told that the girls could use the principal's office to change to change or use the restroom, which subjected Plaintiffs to harassment and embarrassment.

114.    Moreover, the policy harms Plaintiffs because unless they surrender their right to bodily privacy, they can no longer use the locker room or restrooms designated for use by girls without fear of being in the present of naked males.

115.    Defendants' policy violates the fundamental constitutional principles of separate facilities and denies Plaintiffs the right to use such a facility, instead conditioning the use of the "girls'" locker room and restroom on surrendering their right to bodily privacy from persons of the opposite sex.

116.    Plaintiffs and their Guardians on multiple occasions brought up the policy with the Principal, the Vice Principal, and the Superintendent, but their requests for a change in the School District's policy were denied.

117.    Plaintiffs and their guardians were told that the school was no longer going to discuss this issue with them or any parents.

118.    The Defendants have no compelling interest to justify this violation of Plaintiffs' right to bodily privacy from persons of the opposite sex.

119.    The violation of this right is particularly acute where, as here, their right was first violated without any notice or consent in a place traditionally reserved for persons of one biological sex.

120.    The violation was ongoing because it compromises the most intimate aspects of human affairs and involves a setting traditionally reserved for persons of one biological sex. It effectively denies the appropriate use of this setting in a manner conveying sexual harassment and official bullying, and which is otherwise inconsistent with deeply rooted notions of fundamental personal interests in personal privacy from persons of the opposite biological sex.

121.    Defendants failed to employ the least restrictive means of serving any interest that they may later articulate.

122.    Accordingly, the actions and practice fail strict scrutiny review and are unconstitutional.

WHEREFORE, Plaintiffs respectfully request this Court grant declaratory relief in favor of Plaintiffs; grant declaratory judgment that Defendants violated Plaintiffs' constitutional rights to privacy and violated the Fourteenth Amendment of the United States Constitution; award damages in an amount of no less than $30,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus compensatory, incidental, noneconomic, exemplary, and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter; grant such additional relief as the Court deems appropriate; and grant the further relief set forth hereinafter in the Prayer for Relief.

## COUNT 2

## VIOLATION OF TITLE IX

123.    Plaintiffs reallege all matters set forth above and incorporate them herein.

124.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

125.    The School District is a federal funding recipient for purposes of Title IX.

126.    Courts have given Title IX broad effect in order to combat sex discrimination in the educational setting.

127.    There is an implied right of action for a student to sue his school and school officials under Title IX.

128.    Defendants' authorizing people to use restrooms or locker rooms that are designated for the opposite biological sex violates privacy and creates a sexually harassing hostile environment.

129.    Unconsented exposure to persons of the opposite-sex in various states of undress creates a sexually harassing hostile environment.

130.    The policy of the school is to allow those who self-identify with the opposite biological sex to choose to use locker rooms and restrooms that are designated for the opposite biological sex.

131.    Plaintiffs do not object to students of the same sex using private facilities with them, no matter how they self-identify, and they have no expectation of privacy from such students.

132.    However, the School Districts' policy needlessly subjects Plaintiffs to the risk that their partially unclothed bodies will be exposed to the opposite sex and that they will be exposed to a partially clothed person of the opposite-sex, which has actually occurred when the policy was implemented.

133.    As a result, Plaintiffs experienced embarrassment, humiliation, frustration, degradation, and loss of dignity.

134.    Plaintiffs have been marginalized by other students on account of their objection to the policy.

135.    Plaintiffs are avoiding the restroom as a result of the fear and apprehension of embarrassment, humiliation, degradation, and loss of dignity they may experience in the restroom.

136.    Plaintiffs have altogether ceased using the locker room and restrooms because of the legitimate fear that they will be in a state of undress or exposed to an opposite sex student in a state of undress or be exposed to naked males without their consent.

137.    The policy violates Title IX because it intentionally produces unwelcome sexual harassment and creates a hostile environment on the basis of sex and denies access to educational programs and benefits.

138.    In order to make out a Title IX claim: (1) plaintiffs must be subjected to sexual harassment; (2) the harassment must be severe, pervasive, and objectively offensive; (3) the school must be deliberately indifferent to the harassment; and (4) the harassment must result in the denial of access.

139.    Plaintiffs satisfy all elements.

140.    First, Plaintiffs have been subjected to harassment because the practice allows biological males to use the girls' locker rooms and restrooms, which creates a harassing hostile environment specifically on the basis of the sex of the persons involved.

141.    Differences in anatomy is the only reason for separate facilities. Were there no differences in anatomy, there would be no privacy interests justifying separate facilities in the first place.

142.    These differences do not disappear when biological males self-identify as females, and vice versa.

143.    Neither state nor federal law obligates Defendants to provide multi-user private facilities based on what a student wears, whom the student is sexually attracted to, how the student presents or identifies himself or herself, or based on whether a student identifies with their sex or with the opposite sex.

144.    The anatomical differences between the sexes is the reason that Title IX and its implementing regulations allow for separate living facilities, restrooms, locker rooms, and changing areas for each biological sex.

145.    Title IX and its implementing regulations provide for separate living facilities, restrooms, locker rooms, and changing areas for each biological sex based on the recognition that

permitting a person of one biological sex to enter and use the facilities designated for the opposite sex would be sexually harassing.

146.    The policy, which opens the girls' restrooms and locker rooms to biological males, is harassment based on the girls' sex.

147.    Plaintiffs have experienced humiliation, degradation, and loss of dignity and fear the same in the future as a result of the policy and practice.

148.    It is the significant and real anatomical differences between the biological sexes that creates the hostile environment, which is harassment.

149.    Second, the harassment is severe, pervasive, and objectively offensive.

150.    Letting biological males use the girls' restrooms and locker rooms places the bodily privacy of both sexes at risk, and so is sufficiently egregious to satisfy the severity prong.

151.    The harassment is ongoing and continuous, preventing Plaintiffs from using the locker room and discouraging them from using the restrooms, thus satisfying the pervasiveness prong.

152.    The environment is one that a reasonable person would find hostile and objectively offensive, and one that Plaintiffs in fact perceives to be so.

153.    The objective unreasonableness is evident in the fact that we have long recognized the right to a private setting, free from persons of the opposite sex, when in a state of undress or performing private functions.

154.    This principle is recognized in numerous areas of the law, as stated above.

155.    Third, school officials are not only on notice of the hostile environment, but it is the Defendants' policy that establishes and sustains the hostile environment.

156.    Moreover, Plaintiffs and their Guardians repeatedly notified the individual Defendants, who then told Plaintiffs and their Guardians that this is what the school will be doing as a matter of policy.

157.    The Defendants have authority to rescind their policy which would resolve the hostile environment created by that policy.

158.    Despite their knowledge that their practice is creating a hostile environment based on sex, the Defendants have not remedied the situation.

159.    Instead, these officials have advised that, if Plaintiffs perceive the environment to be hostile, Plaintiffs should remove themselves from it by using the principal's office.

160.    Schools cannot escape liability for Title IX violations by requiring the victim of harassment to remove herself from the hostile environment or otherwise suggesting that she is responsible for the harassment he endures.

161.    The principal's office "accommodation" creates a separate but unequal facility that violates Title IX.

162.    Fourth, Plaintiffs have been effectively denied the use of facilities that are to be provided, pursuant to state and federal law, on account of their biological sex.

163.    Defendants' policy and actions violate Title IX by creating a hostile environment on the basis of sex.

WHEREFORE, Plaintiffs respectfully request this Court grant declaratory relief in favor of Plaintiffs; grant declaratory judgment that Defendants violated Title IX; award damages in an amount of no less than $30,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus compensatory, incidental, noneconomic, exemplary, and punitive damages, together with interest,

costs, and actual attorney's fees incurred in maintaining this matter; grant such additional relief as the Court deems appropriate; and grant the further relief set forth hereinafter in the Prayer for Relief.

## COUNT 3

### INVASION OF PRIVACY and INTRUSION UPON SECLUSION

164.    Plaintiffs realleges all matters set forth above and incorporate them herein.

165.    Defendants purposely opened up the girls' locker room and restroom to a biological male who identified as a female.

166.    As a result, Plaintiffs found themselves in the presence of a biological male, who was naked.

167.    One's partially clothed body is a private affair, particularly with regards to a member of the opposite sex.

168.    Defendants' practice, therefore, caused Plaintiffs' private affairs to be intruded upon by being viewed by someone of the opposite sex and intruded upon their privacy by forcing them to be at a place to see a partially clothed male body.

169.    Laws and social custom have long protected our right to be free from undressing in the view of someone of the opposite sex and to be free from viewing someone of the opposite sex undressing.

170.    In particular, laws applicable to public schools require separate facilities on the basis of sex, which has always been understood to mean on the basis of biological/anatomical sex.

171.    Defendants' practice failed to give due regard to Plaintiffs' privacy.

172.    Therefore, the circumstances in which Plaintiffs found themselves, particularly in a setting designed to be private with regards to persons of the opposite sex, would be highly offensive to the ordinary reasonable person.

173.    Plaintiffs lack ongoing access to the girls' locker room and are discouraged in their use of the girls' restroom as a result of this invasion of seclusion.

174.    The intrusions by Defendants were and are objectionable and offensive to a reasonable person, including Plaintiffs.

175.    "Michigan has long recognized the common-law tort of invasion of privacy." *Lewis v. LeGrow*, 258 Mich.App 175, 193; 670 NW2d 675 (2003).

WHEREFORE, Plaintiffs respectfully request this Court award damages in an amount of no less than $30,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus compensatory, incidental, noneconomic, exemplary, and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter; grant such additional relief as the Court deems appropriate; and grant the further relief set forth hereinafter in the Prayer for Relief.

## COUNT 4

## NEGLIGENT BREACH OF FIDICUARY DUTY

176.    Plaintiffs realleges all matters set forth above and incorporate them herein.

177.    At all times relevant to this litigation, Defendants owed a common law and other fiduciary duties to the Plaintiffs through their position as state actors.

178.    Defendants negligently breached that duty on more than one occasion when they allowed biological males to enter the girls' bathrooms and locker rooms and such breaches were the actual and proximate cause of harm to Plaintiffs.

179.    Accordingly, Defendants are liable in damages to Plaintiffs in an amount to be proven at trial, arising out of Defendants' negligent breach of their fiduciary duty to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court award damages in an amount of no less than $30,000.00 for the injuries sustained plus additional damages as may be proven to

compensate them for losses and damages demanded in this Complaint, plus compensatory, incidental, noneconomic, exemplary, and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter; grant such additional relief as the Court deems appropriate; and grant the further relief set forth hereinafter in the Prayer for Relief.

## COUNT 5

## RECKLESS BREACH OF FIDICUARY DUTY

180.    Plaintiffs realleges all matters set forth above and incorporate them herein.

181.    At all times relevant to this litigation, Defendants owed a common law and other fiduciary duties to the Plaintiffs through their position as state actors.

182.    Defendants recklessly breached that duty on more than one occasion when they allowed biological males to enter the girls' bathrooms and locker rooms and such breaches were the actual and proximate cause of harm to Plaintiffs.

183.    Accordingly, Defendants are liable in damages to Plaintiffs in an amount to be proven at trial, arising out of Defendants' negligent breach of their fiduciary duty to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court award damages in an amount of no less than $30,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus compensatory, incidental, noneconomic, exemplary, and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter; grant such additional relief as the Court deems appropriate; and grant the further relief set forth hereinafter in the Prayer for Relief.

## COUNT 6

## INTENTIONAL BREACH OF FIDICUARY DUTY

184.    Plaintiffs realleges all matters set forth above and incorporate them herein.

185.    At all times relevant to this litigation, Defendants owed a common law and other fiduciary duties to the Plaintiffs through their position as state actors.

186.    Defendants intentionally breached that duty on more than one occasion when they allowed biological males to enter the girls' bathrooms and locker rooms and such breaches were the actual and proximate cause of harm to Plaintiffs.

187.    Accordingly, Defendants are liable in damages to Plaintiffs in an amount to be proven at trial, arising out of Defendants' negligent breach of their fiduciary duty to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court award damages in an amount of no less than $30,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus compensatory, incidental, noneconomic, exemplary, and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter; grant such additional relief as the Court deems appropriate; and grant the further relief set forth hereinafter in the Prayer for Relief.

## COUNT 7

## DECLARATORY RELIEF

188.    Plaintiffs realleges all matters set forth above and incorporate them herein.

189.    An actual controversy has risen and now exists between the parties concerning the following matters:

      a.     Defendants' continuous violations of Plaintiffs' fundamental right to privacy in violation of the Fourteenth Amendment to the United States Constitution as set forth in Count 1 above.

      b.     Defendants' continuous violations of Title IX which have and continue to affect Plaintiffs on a daily basis.

      c.      Defendants' continuous violations of their fiduciary duties as state actors to Plaintiffs which have and continue to affect Plaintiffs on a daily basis.

190.    Judicial declarations are necessary and appropriate at this time to enable the parties to ascertain their rights and duties to each other.

WHEREFORE, Plaintiffs respectfully request this Court grant declaratory relief in favor of Plaintiffs; grant declaratory judgment that Defendants violated Plaintiffs' constitutional rights to privacy, violated the Fourteenth Amendment of the United States Constitution, and violated Title IX; award damages in an amount of no less than $30,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus compensatory, incidental, noneconomic, exemplary, and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter; grant such additional relief as the Court deems appropriate; and grant the further relief set forth hereinafter in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and/or severally, as follows:

A.     A declaration that the Defendants' actions and practice violates Plaintiffs' constitutional right to privacy.

B.     A declaration that Defendants' actions were a violation of the Michigan School Reform Act.

C.     A declaration that Defendants committed an unlawful intrusion upon Plaintiffs' seclusion and bodily privacy rights.

D.      A declaration that the Defendants' actions and practice impermissibly burdens Plaintiffs' rights under Title IX to be free from discrimination based on sex by creating a sexually harassing hostile environment.

E.      A declaration that Defendants breached their fiduciary duties.

F.      Additional declaratory relief as requested herein.

G.      A permanent injunction enjoining the Defendants' policy and ordering the Defendants to permit only biological females to enter and use the School District's girls' private facilities, including locker rooms and restrooms, and only biological males to enter and use the boys' private facilities, including locker rooms and restrooms.

H.      An award of compensatory damages for the violation of Plaintiffs' constitutional and statutory rights in an amount of greater than $30,000;

I.      An order that this Court retain jurisdiction of this matter for the purpose of enforcing any Orders;

J.      An award of Plaintiffs' costs and expenses of this action, including a reasonable attorneys' fees award, in accordance with 28 U.S.C. § 2412, 42 U.S.C § 1988;

K.      All other relief to which Plaintiffs may be entitled, including attorneys' fees and costs.

DePERNO LAW OFFICE, PLLC

Dated: August 25, 2023            /s/ Matthew S. DePerno
                                  Matthew S. DePerno
                                  Attorney for Plaintiffs
                                  951 W. Milham Avenue
                                  PO Box 1595
                                  Portage, MI 49081
                                  (269) 321-5064
                                  matthew@depernolaw.com

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their attorneys DePERNO LAW OFFICE, PLLC, hereby demands a trial by jury in the above-entitled matter as to all issues and claims for which a jury trial is allowed.

DePERNO LAW OFFICE, PLLC

Dated: August 25, 2023                    /s/ *Matthew S. DePerno*
                                          Matthew S. DePerno
                                          Attorney for Plaintiffs
                                          951 W. Milham Avenue
                                          PO Box 1595
                                          Portage, MI 49081
                                          (269) 321-5064
                                          matthew@depernolaw.com